# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| PARK CITY WATER AUTHORITY, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION 09-0240-WS-M |
| NORTH FORK APARTMENTS, L.P., et al., | ) ) ) | |
| Defendants. | ) ) | |

## ORDER

This matter is before the Court on three motions to dismiss.  (Docs. 8, 11, 13).  The parties have filed briefs in support of their respective positions, (Docs. 8, 12, 13, 18, 20, 22, 25, 27, 28), and the motions are ripe for resolution.  After carefully considering the foregoing and other relevant material in the file, the Court concludes that each motion is due to be granted in part and denied in part.

## BACKGROUND

The parties agree that the first amended complaint ("the complaint") is the relevant pleading.  The complaint names 19 defendants, falling into three groups as per their motions to dismiss.  The first group consists of the Utilities Board of the City of Daphne ("the Board"), four members of the Board, and three employees of the Board (collectively, "the Board defendants").[1]  The second group consists of the Alabama Rural Water Association, Inc. ("the Association") and two employees of the Association

---

[1]The board members are Bob Segalla, Ron Scott, Lon Johnston and Fred Small. The employees are Rob McElroy, Daniel Lyndall and Drew Klumpp.  These defendants are sued in both their individual and their official capacities.

(collectively, "the Association defendants").[2]  The third group consists of five entities and three individuals involved in the development of the North Fork apartment complex (collectively, "the North Fork defendants").[3]  (Doc. 4 at 1, ¶¶ 4-20).

The plaintiff is a water authority established pursuant to Alabama statute, which provides water services to consumers in the Park City community of Daphne.  Its creation included establishment of a legally protected service area or territory.  Shortly after its 1977 incorporation, the plaintiff (which has no water treatment facilities of its own), contracted with the Board to obtain water to serve its customers.  About the same time, the plaintiff obtained a Farmer's Home Administration loan.  (Doc. 4, ¶¶ 3, 21-23).

In the 1980's, the plaintiff sued the Board and prevailed on unstated theories.  Around the same time, the plaintiff successfully resisted the Board's overtures to enter an agreement allowing the Board to cut off water to the plaintiff's customers in order to encourage payment to the Board and the City of Daphne ("the City") of delinquent sewage and garbage fees, which agreement the plaintiff believed to be illegal.  In 2008, the Association through Phillips recommended that Phillips and Horne mediate the negotiations between the plaintiff and the Board concerning the Board's proposal.  The plaintiff depleted funds and goodwill defending itself from the Board's overtures.  (Doc. 4, ¶¶ 25-29, 32).

In 1999, the Board began charging the plaintiff payments-in-lieu-of-taxes ("PILOT") fees.  In 2006, the Board prevailed upon the City to enact an ordinance providing for PILOT and franchise fees on the plaintiff, even though these fees are unlawful under state and federal law.  (Doc. 4, ¶¶ 30-31).

_____

[2]The employees are executive director Kathy Horne and "circuit rider" Catherine Phillips.  They are sued in both their individual and their official capacities.

[3]The entities are North Fork Apartments, L.P. ("Apartments"),BREC Development, LLC, Spitfire Funding LLP, Spitfire Realty, LLC, and Highland Mortgage Company ("Highland").  The individuals are Eric Lipp, Steven Hydinger and Robert Field.

In 1997, Fields (through Apartments and Highland) began planning an apartment complex in the plaintiff's service area. Without permission from the plaintiff, the Board shared with Apartments numerous documents the plaintiff had provided the Board. (Doc. 4, ¶ 33-34).

On the advice of the Association (which is in a fiduciary relationship with the plaintiff), the plaintiff retained an outside engineer to assess whether the plaintiff could serve the North Fork project. Apartments, through Lipp and Hydinger, called the engineer and warned him the plaintiff was being uncooperative and that Apartments was about to sue the plaintiff. The engineer, utilizing incorrect information, then issued a letter concluding that the Board, but not the plaintiff, could serve the project. The engineer has withheld from the plaintiff information that would show the plaintiff's ability to serve the project and has failed to return important papers to the plaintiff. (Doc. 4, ¶¶ 12, 35-36).

In early 2009, and at the urging of the Association, the plaintiff entered a new contract with the Board to upgrade its water use capacity in order to accommodate the North Fork project. The Association's advice was based a flawed study by Phillips. (Doc. 4, ¶ 37).

The 2009 contract includes several provisions to which the plaintiff objects. First, it changes the location of the plaintiff's connection point to the Board's system, in a manner that benefits the North Fork project and deprives the plaintiff of its right to determine where the project will connect to the plaintiff's system. Second, it requires the plaintiff to pay a $150,000 fee for this connection, which is in excess of the amount provided by the 1977 contract. Third, it requires the plaintiff to pay for various equipment, materials and labor associated with the new connection point. Fourth, it provides for Board ownership of the equipment provided by the plaintiff. (Doc. 4, ¶¶ 38-40).

The Board requires the plaintiff to pay fees that include costs of the capitalization

-3-

of the City's water and sewer system, in violation of the 1977 contract and federal law. (Doc. 4, ¶ 41).

The Board has sold, and still does sell, water within the plaintiff's territory.  It encroaches on the plaintiff's territory and acts in competition for water service within the territory by conspiring with "developers and others."  (Doc. 4, ¶¶ 42-43).[4]

Following this factual development, the complaint lists seven causes of action:

- Count One          Section 1983
- Count Two          Declaratory judgment
- Count Three        Breach of contract
- Count Four         Violation of 7 U.S.C. § 1926(b)
- Count Five         Breach of covenant of good faith
- Count Six          Breach of the Alabama Trade Secrets Act
- Count Seven        Breach of Ala. Code §§ 11-50-1 et seq./Conspiracy

(Doc. 4 at 13-18).[5]


## DISCUSSION

The North Fork and Association defendants make a number of arguments but primarily assert that they are not defendants under various counts and that no wrongdoing by them is alleged in any event.  The Board defendants do not join these arguments but seek dismissal of Counts One and Four on other grounds.  All three motions are brought under Rule 12(b)(6).

---

[4]The remaining seven paragraphs of the complaint (preceding the pleading of counts) offer only legal authority, without factual allegations.  (*Id.*, ¶¶ 44-50).

[5]The jurisdictional paragraph of the complaint mentions Section 1985(1), Section 1985(3), and Section 1986.  (*Id.*, ¶ 2).  The prayer for relief mentions "the Federal Antitrust Statutes Title 15 U.S.C. §et seq." [sic] The complaint, however, asserts no cause of action under any of these statutes.  The plaintiff does not claim otherwise.

**I. Identity of Defendants.**

When the motions to dismiss arrived, the Court entered an order instructing the plaintiff, in its responsive brief, to "state explicitly, separately for each of the seven counts, which of the 19 defendants is a defendant as to that count." (Doc. 14).  The plaintiff declined to comply with that order, instead offering only veiled, partial suggestions as to what it views as the defendants under each count.  The identity of the defendants under each count will be determined by the Court based on the language of the complaint, with the plaintiff's suggestions — which are not based on the actual wording of the counts — addressed in footnotes.

**A.  Count One - Section 1983.**

Count One alleges that "[t]he actions of Defendants, members of a municipal board, ... individually and collectively have deprived" the plaintiff of its protected rights. (Doc. 4, ¶ 53).  Count One also alleges that "[t]he actions of Defendant Utilities Board of the City of Daphne were conducted under color of law ...."  (*Id.*, ¶ 54).  There are no allegations implicating any other defendant.  Only the Board and the four members of the Board (Segalla, Scott, Johnston and Small) are defendants under Count One.[6]

---

[6]The plaintiff suggests that other defendants (apparently, the Association, Apartments, Fields, Lipp and Hydinger) are also defendants under Count One because they committed acts "to further the conspiracy alleged" in Count Seven.  (Doc. 18 at 5). This is not possible, since Count One does not allege a conspiracy, does not incorporate by reference the conspiracy allegations of Count Seven, and does not identify conspirators as defendants under Count One. The plaintiff also posits without explanation that it has alleged a Section 1983 claim against the Association, (Doc. 20 at 6-7), but the plain language of Count One limits its reach to the Board and its four members.  Finally, the plaintiff nakedly "contends" that all seven counts extend to all four Board members and all three Board employees.  (Doc. 22 at 5).  As discussed in Parts I.A - I.F, the plain language of Counts One through Six will not bear that interpretation.  The plaintiff's ipse dixit alters nothing.

**B.  Count Two - Declaratory Judgment.**

Count Two identifies the case or controversy supporting a request for declaratory relief as concerning "Defendant's right to sell water within its Territory without an obligation to pay capacity fees"; "Defendant Utilities Board of the City of Daphne's charging Plaintiffs" certain fees; and "what reasonable compensation and damages Defendants [sic] should receive for the Utilities Board of the City of Daphne and other defendants breaches of" the 1977 contract.  (Doc. 4, ¶ 57).  Count Two also seeks a declaration concerning "the right of the Defendant to sell water within the Territory" as well as establishing damages "which Defendant Utilities Board of the City of Daphne must pay Plaintiff" for encroaching on its territory.  (*Id*., ¶¶ 58-59).  Count Two also seeks a declaration that "[t]he Utilities Board of the City of Daphne" provides water at a cost in violation of federal law.  (*Id*., ¶¶ 60-61).

Most of these allegations are expressly limited to the Board.  While Count Two mentions breaches of the 1977 contract by the Board "and other defendants" (who are not identified), the complaint establishes that the parties to the 1977 contract were the plaintiff and the Board.  (Doc. 4, ¶¶ 22, 24; Doc. 1, Exhibit 5 at 1).  Accordingly, only the Board could be in breach of the 1977 contract.[7]  The other defendants, to the extent the plaintiff genuinely intended to name them as defendants to a breach of contract, are entitled to dismissal.  Only the Board is a defendant under Count Two, paragraphs 56 to 61.[8]

---

[7]*E.g., Pate v. Rollison Logging Equipment, Inc.*, 628 So. 2d 337, 343 (Ala. 1993) ("[The defendant] was not a party to the insurance contracts and, therefore, could not be liable for breach of those contracts."); *Henson v. Celtic Life Insurance Co.*, 621 So. 2d 1268, 1270 n.2 (Ala. 1993) ("Obviously, the defendant Jones cannot be held liable for the breach of a contract to which he was not a party ....").

[8]The plaintiff says it has alleged in Count Two "that the North Fork Defendants have conspired with the other Defendants to benefit itself [sic] at the expense of Plaintiff."  (Doc. 18 at 6).  A conspiracy has been alleged in Count Seven, but not in Count Two.

In its final paragraph, Count Two alleges that the Association directed the Board and Apartments to draft documents favorable to them, including the 2009 contract; that the Association provided the plaintiff these documents for execution; that the Association concealed from the plaintiff the involvement of the Board and Apartments; and that the documents were written for the purpose of defrauding the plaintiff. (Doc. 4, ¶ 62). The Board, the Association and Apartments are the only defendants under Count Two, paragraph 62.[9]

### C.  Count Three - Breach of Contract.

Count Three identifies requirements and restrictions placed on "the Utilities Board of the City of Daphne" by the "Water Purchase Contract"[10] and alleges the Board is in "breach of its contract with" the plaintiff. (Doc. 4, ¶ 64). No other defendant is mentioned in Count Three, and no other defendant is in a contractual relationship with the plaintiff. The Board is the only defendant under Count Three.[11]

### D.  Count Four - Section 1926(b).

Count Four alleges that, if the Board terminates water sales to the plaintiff or requires the plaintiff to pay certain fees, "the Utilities Board of the City of Daphne will be in violation of § 1926(b) ...." (Doc. 4, ¶ 66). No other defendant is mentioned in Count

---

[9]The North Fork defendants assert that "[t]here are no allegations stated in Count Two against any of the North Fork Defendants," (Doc. 8 at 2-3), but that is plainly incorrect as to Apartments. The Association's similar argument, (Doc. 28 at 2), is equally mistaken.

[10]The complaint elsewhere identifies this as the 1977 contract. (Doc. 4, ¶¶ 22, 24).

[11]The plaintiff asserts that "[t]he Defendant's [sic] all conspired to breach Plaintiff's contract." (Doc. 18 at 7). There is no such allegation in the complaint. The only conspiracy claim is found in Count Seven, and it is limited to a conspiracy to violate an Alabama statute. *See infra* Part I.G.

Four.  The Board is the only defendant under Count Four.[12]

### E.  Count Five - Covenant of Good Faith.

The plaintiff admits that the North Fork defendants and the Association defendants are not defendants under Count Five.  (Doc. 18 at 7; Doc. 20 at 5).  Mirroring Count Four, Count Five alleges that, if the Board terminates water sales to the plaintiff or requires the plaintiff to pay certain fees, "the Utilities Board of the City of Daphne will be in violation of the covenant of good faith."  (Doc. 4, ¶ 68).  No other defendant is mentioned in Count Five.  The Board is the only defendant under Count Five.

### F.  Count Six - Trade Secrets.

The plaintiff admits that the North Fork defendants and the Association defendants are not defendants under Count Six.  (Doc. 18 at 7; Doc. 20 at 5).  Count Six alleges that "[t]he Utilities Board of the City of Daphne" has taken the plaintiff's private information, that "the Utilities Board of the City of Daphne illegally acquired" this information, that "the Utilities Board of the City of Daphne used the trade secrets ...  without a privilege to do so, and is liable to" the plaintiff for misappropriation of trade secrets.  (Doc. 4, ¶¶ 71-74).  No other defendant is mentioned in Count Six.  The Board is the only defendant under Count Six.

### G.  Count Seven - Section 11-50-1 et seq.

Count Seven alleges that the Board "has conspired with the other Defendants in order to duplicate the services of [the plaintiff] in breach of Ala. Code § 11-50-1.1

---

[12]The plaintiff suggests this claim extends to the North Fork defendants because the complaint contains allegations that would support their liability.  (Doc. 18 at 7).  The problem is that Count Four on its face extends only to the Board, and speculation about which defendants *could have been* sued for violation of Section 1926(b) cannot trump clear language in Count Four specifically identifying which defendant *is* sued.

(1994)."  (Doc. 4, ¶ 76).  All 19 defendants are defendants under Count Seven.

## II.  Count-Specific Arguments.

### A.  Count One - Section 1983.

In order to survive a motion to dismiss for failure to state a claim under Rule
12(b)(6), a complaint must as a threshold matter provide "a short and plain statement of
the claim showing that the pleader is entitled to relief" as required by Rule 8(a)(2).  *Bell
Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Though they need not be detailed,
"[f]actual allegations must be enough to raise a right to relief above the speculative level
...."  *Id.*  Thus, neither "labels and conclusions" nor "a formulaic recitation of the
elements of a cause of action" suffices to satisfy Rule 8(a)(2).  *Id.*  "Stated differently, the
factual allegations in a complaint must 'posses enough heft' plausibly to suggest that the
pleader is entitled to relief. ...  Facts that are 'merely consistent with' the plaintiff's legal
theory will not suffice when, 'without some further factual enhancement [they] stop short
of the line between possibility and plausibility of "entitlement to relief."'"  *Weissman v.
National Association of Securities Dealers, Inc*., 500 F.3d 1293, 1310 (11ᵗʰ Cir. 2007)
(quoting *Twombly*, 550 U.S. at 557).

The Board member defendants (Segalla, Scott, Johnston and Small) correctly note
that Count One contains only the "formulaic recitation" that their actions "have deprived
[the plaintiff] of the above described federal and state rights."  (Doc. 4, ¶ 53).  They argue
that the complaint contains no factual allegations concerning their "actions" that could
support the legal conclusion that they violated the plaintiff's rights.  (Doc. 12 at 4).  The
Court's review of the complaint confirms that it alleges only that each of the four is a
member of the Board.  (Doc. 4, ¶¶ 5-8).

The plaintiff responds that "the Board can only act through its individual
members."  (Doc. 22 at 5).  This is of course incorrect.  The Board can act through its
employees and other agents as well as through official action of the Board, and the

complaint offers no clue whether any particular Board action of which the plaintiff complains was taken by its members, by its employees, or by others acting on its behalf. In this posture, the single allegation that Segalla, Scott, Johnston and Small are members of the Board is "merely consistent" with their liability; without "some further factual enhancement" it is not enough to render their liability plausible.

The plaintiff also suggests, without explanation, that the offensive conduct of the Board member defendants "is established in the minutes of" the Board.  (Doc. 22 at 5). Minutes of two Board meetings were attached to the original complaint but not to the amended complaint.  (Doc. 1, Exhibit 7 at 11-20).  Assuming without deciding that these minutes are part of the amended complaint despite not being appended thereto, they do not advance the plaintiff's position.

Count One hinges liability on the defendants' actions in curtailing or limiting the plaintiff's federally protected right to sell water within its territory, (Doc. 4, ¶ 52), and the minutes do not remotely suggest any such activity by the defendant Board members.  On March 1, 2006, the members voted to approve, once a rate structure was set, an agreement with the plaintiff allowing the plaintiff to bill for sewer usage and to forward the proceeds.  (Doc. 1, Exhibit 7 at 12).[13]  On January 31, 2007, it was reported that no agreement had been entered and that negotiations were ongoing; no action was taken.  (*Id.* at 16).  The complaint does not allege that any such agreement was ever entered.  (Doc. 4, ¶¶ 27-29).  The conduct reflected in the minutes does not make it plausible that the Board member defendants could be liable for curtailing or limiting the plaintiff's federally protected right to sell water within its territory.

The Board advances some arguments of its own.  First, it notes that violations of Section 1926(b) can support a claim under Section 1983 only if the former statute creates a "federal right" as deduced from a complex, subtle analysis.  (Doc. 12 at 7-8). Unfortunately, the Board merely describes the governing test without meaningfully

---

[13]Defendant Johnston was not at this meeting and did not vote.  (*Id.* at 11).

applying it.  The Court will not supply the deficiency.

Second, the Board argues that the plaintiff is not a "person" able to bring suit under Section 1983.  (Doc. 12 at 8-9).  This argument depends on at least two premises: first, that a municipality (even though it is a "person" under Section 1983 when it is a defendant)[14] is not a "person" under Section 1983 when it is a plaintiff; and second, that the plaintiff (which is not a municipality or a municipal agency) is captured by any rule excluding municipalities as Section 1983 plaintiffs.  The Board's superficial treatment fails to establish either premise.

### B.  Count Two - Declaratory Judgment.

The Association argues, in a single sentence, that the complaint sets forth no factual allegations or legal principles that would support a declaratory judgment against it.  (Doc. 13 at 2-3; Doc. 28 at 2).  As noted in Part I.B, the complaint alleges that the Association, although in a fiduciary relation with the plaintiff, directed the Board and Apartments to draft documents (including the 2009 contract) that were harmful to the plaintiff's interests, concealed the involvement of the Board and Apartments (whose interests were adverse to the plaintiff's) in the creation of the contract, urged the plaintiff to enter the flawed contract, and did so with the intent to defraud the plaintiff.  (Doc. 4, ¶¶ 12, 37, 62).  The Association does not suggest how these allegations could fail to satisfy any applicable pleading requirement, and the Court will not construct arguments on the Association's behalf.

In their initial brief, the North Fork defendants argued only that the body of Count Two makes no allegations against any North Fork defendant.  (Doc. 8 at 2-3).  As noted in Part I.B, Count Two does make express allegations against Apartments.  In their reply brief, the North Fork defendants change tacks, arguing that the complaint as a whole fails to allege facts giving rise to a bona fide justiciable controversy.  (Doc. 27 at 3-4).  District

---

[14]*Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978).

courts, including this one, ordinarily do not consider arguments raised for the first time on reply. *Waddell v. Holiday Isle, LLC*, 2009 WL 2413668 at *4 & n.5 (S.D. Ala. 2009) (collecting cases). Because the North Fork defendants offer no reason to depart from this rule, their argument will not be considered on motion to dismiss.

### C.  Count Four - Section 1926(b).

The Board argues that Section 1926(b) does not provide for a private cause of action. (Doc. 12 at 5-7). Its argument rests on footnoted dicta that "[i]t could be argued" that no such private right exists. *Freemanville Water System, Inc. v. Poarch Band of Creek Indians*, 563 F.3d 1205, 1207 n.2 (11th Cir. 2009). As the Board itself notes, the determination whether a federal statute provides a private cause of action depends on a painstaking, multi-factor analysis, and the *Freemanville* Court did not undertake such an analysis but instead "proceed[ed] on the assumption ... that § 1926(b) does create a private right of action." *Id*. Nor does the Board present a thorough analysis, instead offering a short paragraph of unexplained, unsupported conclusions that three of the four factors are satisfied. (Doc. 12 at 6). The Board's presentation is too skeletal to trigger a response obligation by the plaintiff or consideration by the Court.[15]

### D.  Count Seven - Sections 11-50-1 et seq.

The North Fork defendants argue that a conspiracy claim must allege an improper purpose and that the complaint fails to do so. (Doc. 8 at 3). As a threshold matter, the defendants have not shown that the plaintiff is required to allege an improper purpose.

---

[15]In its reply brief, the Board argues that, if the plaintiff can proceed under Section 1926(b), it cannot also proceed under Section 1983 for a violation of the plaintiff's rights under Section 1926(b). (Doc. 25 at 3). Having been raised for the first time in reply, the argument will not be considered. However, the Court notes that the availability of a private right of action under Section 1926(b) remains an open question in this case, so it would be premature to consider the Board's argument even had it been timely presented.

According to the defendants' sole cited authority, an improper purpose is required only if the conspiring defendants did not employ unlawful means,[16] and the complaint alleges that the Board unlawfully duplicated the plaintiff's services and that the other defendants conspired with the Board to do so.  (Doc. 4, ¶ 76).  This would appear to be an allegation of unlawful means, rendering an improper purpose irrelevant.  The North Fork defendants do not address this difficulty with their position.

Even if an improper purpose is an element of the plaintiff's cause of action and must be pleaded, the North Fork defendants have not shown that the complaint contains no such allegation.  Both before and after *Twombly*, there need only be "inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."[17]  Count Seven alleges that the defendants conspired to violate Section 11-50-1.1 and did so "for [the] financial gain" of the Board, which would seem to constitute at least an inferential allegation of an improper purpose.  Certainly the North Fork defendants do not explain how it cannot be so construed.

The North Fork defendants also point out that a conspiracy claim cannot survive absent an underlying substantive wrong.  (Doc. 8 at 4).  True enough, but neither they nor the Board have attempted to show that the plaintiff cannot prove a violation of Section 11-50-1.1, which is the underlying wrong expressly alleged for purposes of Count Seven and the conspiracy claim therein.

In their reply brief, the North Fork defendants try a new approach, arguing that it is "illogical" for the plaintiff to claim it has a viable conspiracy claim against any defendant as to which no allegations are made elsewhere in the complaint.  (Doc. 27 at 5).  As noted

---

[16]*Snyder v. Faget*, 326 So. 2d 113, 119 (Ala. 1976).

[17]*Financial Security Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282-83 (11th Cir. 2007) (internal quotes omitted).

in Part II.B, the Court will not consider arguments first presented on reply.[18]

### E.  State Lawsuit.

The North Fork defendants "note that a similar lawsuit is pending in Baldwin County."  (Doc. 8 at 4).  They do not articulate the relevance of this fact, and the Court will not address it on their behalf.  For now, it is enough to note that "[g]enerally, as between state and federal courts, the rule is that pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Ambrosia Coal and Construction Co. v. Pages Morales*, 368 F.3d 1320, 1328 (11th Cir. 2004) (internal quote omitted).

### CONCLUSION

For the reasons set forth above, the North Fork defendants' motion to dismiss is **granted** as to all defendants with respect to Counts One, Three, Four, Five and Six and is **granted** as to all defendants except Apartments with respect to Count Two.  The North Fork defendants' motion to dismiss is **denied** as to Apartments with respect to Count Two and is **denied** as to all defendants with respect to Count Seven.

For the reasons set forth above, the Association defendants' motion to dismiss is **granted** as to all defendants with respect to Counts One, Three, Four, Five and Six and is **granted** as to all defendants except the Association with respect to Count Two.  The Association defendants' motion to dismiss is **denied** as to the Association with respect to Count Two and is **denied** as to all defendants with respect to Count Seven.

As to the Board defendants, for the reasons set forth above the Court construes Counts Two, Three, Four, Five and Six as naming only the Board as a defendant.  The Board defendants' motion to dismiss is **granted** as to all defendants except the Board

---

[18]The Association defendants' only argument as to Count Seven is that they are not named as defendants thereunder.  (Doc. 28, ¶ 4).  Their position was rejected in Part I.G.

with respect to Count One.  The Board defendants' motion to dismiss is **denied** as to the Board with respect to Counts Two and Four.

For clarification, these rulings leave the following defendants in play:

- Count One                Board
- Count Two, ¶¶ 56-61     Board
- Count Two, ¶ 62         Board, Association, Apartments
- Count Three             Board
- Count Four              Board
- Count Five              Board
- Count Six               Board
- Count Seven             all 19 named defendants

DONE and ORDERED this 21st day of October, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE